# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DEBORAH L. DEROZIER,

    Plaintiff,

v.                                          Case No. 09-C-100

WALGREEN CO.,
CHOICEPOINT WORKPLACE SOLUTIONS, INC.,
and JASON J. JARMUSKIEWICZ,

    Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Deborah L. DeRozier filed this action against her former employer, Walgreen Co. ("Walgreen"), Jason J. Jarmuskiewicz, an assistant manager at the Walgreen's store where she worked, and ChoicePoint Workplace Solutions, Inc. ("ChoicePoint"), a consumer reporting agency. In her amended complaint, DeRozier asserts two claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), and a state claim that Walgreen breached her employment contract. Jurisdiction rests upon 28 U.S.C. § 1331 for the FCRA claims and 28 U.S.C. § 1367 for the pendent state claim. This matter is before me on Walgreen's motion for summary judgment. For the reasons stated below, I will grant the motion, though only in part.

## BACKGROUND

There is little dispute between Walgreen and DeRozier on the basic facts, as opposed to the inferences to be drawn from those facts, which at this stage are viewed in the light most favorable

to the plaintiff. On July 26, 2008, DeRozier was an employee of Walgreen, working as a cashier at one of its drug stores located in Green Bay, Wisconsin. (Def.'s PFOF ¶ 1.) During her shift on July 26, 2008, DeRozier removed $10 in cash from her register and used it to repay a debt she owed to the daughter of an acquaintance who came into the store during DeRozier's shift and asked about repayment. (Pl.'s Add'l PFOF ¶¶ 12-13.) At the time DeRozier repaid the debt, she did not have any cash or a debit card on her person. She did have a personal check, however, and intended to use it to make purchases of her own from Walgreen when her shift ended. DeRozier claims that when she removed the $10 from her cash register to repay a personal debt, it was her intent to write the check to another cashier for $10 more than the amount of her purchases and then replace the $10 she had taken with the $10 she received in change. (*Id.* ¶ 16.) In fact, DeRozier made her purchases at the end of her shift and wrote out a check for the price of the purchases plus $10. (*Id.* ¶¶ 14-17.)

The Walgreen manager on duty pulls the drawers at the end of each cashier's shift and counts the cash, so DeRozier was aware that any cash missing from her drawer would be discovered at the end of her shift. (*Id.* ¶ 11.) Jarmuskiewicz had already pulled DeRozier's cash drawer by the time she went to replace the $10. (*Id.* ¶ 18.) As she could not put the money in her drawer, DeRozier approached Jarmuskiewicz and gave him the $10 with an explanation and an apology. (*Id.* ¶ 19.) Jarmuskiewicz reported the incident to the Walgreen's loss prevention office.

On August 6, 2008, DeRozier signed a statement admitting she removed $10 from her cash register in order to repay a debt and that she was aware this was wrong. (Def.'s PFOF ¶ 5.) Walgreen store manager, Richard Varick, terminated DeRozier's employment. (*Id.* ¶ 6.) Walgreen then notified ChoicePoint that DeRozier's employment had been terminated due to theft. (*Id.* ¶ 8.) Walgreen later sent DeRozier letters demanding payment of hundreds of dollars on threat of legal

2

action. (Pl.'s Add'l PFOF ¶ 20.) Walgreen also unsuccessfully contested DeRozier's application for unemployment benefits. (*Id.* ¶¶ 21-24.)

According to her complaint, DeRozier learned that Walgreen had reported to ChoicePoint the she was terminated for theft when she applied for a job at another drug store and was rejected after the store obtained a copy of her credit report from ChoicePoint. The amended complaint alleges that DeRozier complained to ChoicePoint that the information provided by Walgreen was inaccurate, and even though she believes ChoicePoint notified Walgreen that she disputed the information, neither ChoicePoint nor Walgreen conducted a re-investigation or corrected the information. (Am. Compl. ¶¶ 16-19.) DeRozier seeks compensatory, statutory and punitive damages.

## ANALYSIS

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The FCRA prohibits any person from reporting to a consumer reporting agency information that the person knows or has a reasonable cause to believe is inaccurate, 15 U.S.C. § 1681s-2(a), but "Section 1681s-2(c) specifically exempts violations of § 1681s-2(a) from private civil liability; only the Federal Trade Commission can initiate a suit under that section." *Lang v. TCF Nat'l Bank*, No. 08-4295, 2009 WL 2207919, *2 (7th Cir. July 24, 2009) (unpublished decision) (citing *Perry v. First Nat'l Bank*, 459 F.3d 816, 822 (7th Cir. 2006); *Gorman v. Wolpoff & Abramson, LLP*, 552 F.3d 1008, 1020 n.13 (9th Cir. 2009); *Saunders v. Branch Banking And Trust Co. Of Va.*, 526 F.3d

3

142, 149 (4th Cir. 2008)); *see also Donovan v. Bank of America*, 574 F. Supp. 2d 192, 205 (D. Me. 2008) ("But there is no private cause of action under § 1681s-2(a)."). Before Walgreen filed its motion for summary judgment, DeRozier had already conceded that no such claim exists under current law. (Doc. # 17 at 4-5.) She has continued to make the same concession in subsequent submissions to the Court. Because there is no private right of action for furnishing inaccurate information under the FCRA, Walgreen's motion will be granted as to any such claim.

This leaves two other claims against Walgreen which DeRozier contends do have legs. First, DeRozier alleges that Walgreen violated § 1681s-2(b) of the FCRA by failing to re-investigate and correct the information it had reported after being contacted by ChoicePoint that DeRozier had disputed the veracity of the report. (Am. Compl. ¶ 19.) She also claims that Walgreen terminated her employment in violation of her contract. (Am. Compl. ¶ 9.)

The FCRA places obligations on an entity that furnishes information to consumer reporting agencies once the furnisher of information receives notice from the reporting agency of a dispute regarding the accuracy or completeness of such information. In the event of such notice, the furnisher must: (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the consumer reporting agency; (3) report the results of the investigation to the reporting agency; and (4) if the information is found to be inaccurate or incomplete, report the results to all consumer reporting agencies to which it originally provided the erroneous information. 15 U.S.C. § 1681s-2(b). Although the FCRA does not specify the level of investigation a furnisher must undertake to satisfy this provision, the Seventh Circuit has found an implicit requirement in the statute that the investigation be reasonable. *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) ("Whether a defendant's investigation is reasonable

4

is a factual question normally reserved for trial; however, summary judgment is proper if the reasonableness of the defendant's procedures is beyond question.") (citing *Crabill v. Trans Union LLC*, 259 F.3d 662, 664 (7th Cir. 2001)); *see also Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004) (holding that the furnisher's investigation must be reasonable).

Walgreen has offered no evidence that it conducted any investigation of the disputed information, nor is it clear that its obligation to do so under the FCRA was ever triggered. In her Amended Complaint, DeRozier alleges "[u]pon information and belief" that ChoicePoint notified Walgreen of DeRozier's dispute regarding the information in her consumer report and that Walgreen subsequently failed to perform an adequate investigation of the report it made to ChoicePoint or correct the report. (Am. Compl. ¶ 19.) Walgreen denies this allegation in its Answer. (Doc. # 23.) Neither Walgreen nor DeRozier, however, have submitted affidavits or proposed findings of fact regarding whether or not Walgreen actually received a notice of dispute from ChoicePoint under § 1681i(a)(2), which would trigger its obligation to investigate, and if necessary, correct the information under § 1681s-2(b). Instead, Walgreen takes the position that, given DeRozier's own admission that she paid a personal debt with $10 she took from her register, there was no disputed information to investigate. What DeRozier admits she did, Walgreen contends, is in fact a theft, and thus the information it provided to ChoicePoint was accurate. The question thus presented is whether the conduct to which DeRozier admits constitutes the crime of theft.

DeRozier argues that her conduct does not constitute the crime of theft because Wis. Stat. § 943.20(1)(b), which codifies the crime of theft by employee, or embezzlement, requires that the alleged thief act with unlawful intent. (Pl.'s Resp. To Def.'s Mot. for S.J. at 4.) (citing *In re*

5

*Neumann*, 13 B.R. 128, 131 (E.D. Wis. 1981) ("In the absence of evidence of unlawful intent, neither larceny nor embezzlement can be found to exist. . . . [E]mbezzlement requires a showing of fraudulent conversion or intent to defraud the owner."). Since she did not intend to steal from her employer and even paid the money back before it was discovered missing, DeRozier contends that her conduct did not constitute theft. Walgreen's failure to investigate and correct the misinformation it furnished ChoicePoint is therefore actionable under § 1681s-2(b).

Furthermore, DeRozier notes, the issue of whether she acted with intent to steal has already been decided against Walgreen during the dispute over her unemployment benefits. Following an evidentiary hearing on the matter, the Wisconsin Department of Workforce Development found:

> The employee [DeRozier] did not intend to steal any money from her employer. She expected to replace the missing cash by the end of her shift. Her actions on July 26 demonstrated poor judgment, but the record does not support a finding that the employee's behavior was intentional, nor does it demonstrate the level of negligence that might lead the tribunal to infer a substantial disregard of the employer's interests.

(Townsend Decl., ¶ 5, Ex. A. at 5.) The Department's finding, DeRozier contends, is entitled to preclusive effect in these proceedings. (Pl.'s Br. In Resp. at 5.) Under these circumstances, DeRozier concludes, Walgreen is not entitled to summary judgment on her § 1681s-2(b) claim.

It is not altogether clear, however, that fraud is an element of employee theft under Wisconsin's current criminal code. To defraud is "to cause injury or loss (to a person) by deceit." *Black's Law Dictionary* (7th ed. 1999) at 434. To be sure, Wisconsin recognizes theft by fraud, which is obtaining title to property of another through the use of fraudulent representations. *See* Wis. Stat. § 943.20(d). But the crime of theft by employee does not include fraud as an element. Wisconsin's jury instruction for the crime of theft by employee lists four elements:

6

>    1. The defendant had possession of money belonging to another because of her employment;
>
>    2. The defendant intentionally used the money without the owner's consent and contrary to the defendant's authority;
>
>    3. The defendant knew that the use of the money was without the owner's consent and contrary to the defendant's authority; and
>
>    4. The defendant intended to convert the money to her own use or the use of another.

WIS JI-CRIMINAL 1444. According to the official comment to the instruction, "[t]he essential distinction between a violation of section 943.20(1)(a) [simple theft] and section 943.20(1)(b) [employee theft] of the Criminal Code is that, under subsection (1)(a), the intention to return the property is a defense; whereas, under subsection (1)(b), an intention to return the property is not a defense since an intent to deprive the owner permanently is not essential to constitute the offense." WIS JI-CRIMINAL 1444 COMMENT (citing Baldwin, *Criminal Misappropriation in Wisconsin — Part I*, 44 Marq. L. Rev. 253, 275 (1960-61)). Likewise, note 7 to the instruction states: "Under section 943.20(1)(b), an intent to pay back the money or restore the property at a later time is not a defense even though such intent existed contemporaneously with the act of conversion." *Id.*, n. 7 (citing *Boyd v. State*, 217 Wis. 149, 258 N.W. 330 (1935); and *McGeever v. State*, 239 Wis. 87, 93-94, 300 N.W. 486 (1941)).

Thus, it appears that under Wisconsin law, the fact the DeRozier claims she intended to repay the money she took from her register at the end of her shift is irrelevant to the question of whether her conduct amounts to a theft. Were I writing on a clean slate, I would therefore be inclined to grant summary judgment in favor of Walgreen. But I am not writing on a clean slate. This issue has already been addressed by the Wisconsin Department of Workforce Development,

7

which found in DeRozier's favor. DeRozier makes a non-frivolous argument that the Department's finding is entitled to preclusive effect on the very issue Walgreen seeks to litigate here, and Walgreen has failed to address DeRozier's issue preclusion argument other than to note in conclusory fashion that the ruling of the Department is "based on an entirely different standard when compared with the present case." (Def.'s Reply Br. at 2.)

Under these circumstances, I cannot conclude that Walgreen is entitled to the relief it seeks. Accordingly, its motion for summary judgment is granted only as to DeRozier's § 1681s-2(a) claim; it is denied in all other respects.

**SO ORDERED** this   2nd   day of September, 2009.

                                                  s/ William C. Griesbach
                                                  WILLIAM C. GRIESBACH
                                                  United States District Judge