# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

DEBORAH L. DEROZIER,

        Plaintiff,

    v.                                 Case No. 09-C-100

WALGREEN CO.,
CHOICEPOINT WORKPLACE SOLUTIONS, INC.,
and JASON J. JARMUSKIEWICZ,

        Defendants.

---

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Deborah L. DeRozier filed this action against her former employer, Walgreen Co. ("Walgreen"), Jason J. Jarmuskiewicz, an assistant manager at the Walgreen's store where she worked, and ChoicePoint Workplace Solutions, Inc. ("ChoicePoint"), a consumer reporting agency. In her amended complaint, DeRozier asserts two claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"),[1] and state claims that Walgreen breached her employment contract and Jarmuskiewicz tortiously interfered with an actual or prospective contract between DeRozier and Walgreen. Jurisdiction rests upon 28 U.S.C. § 1331 for the FCRA claims and 28 U.S.C. § 1367 for the pendent state claims. This matter is before me on Walgreen's and Jarmuskiewicz's motions for partial summary judgment. For the reasons stated below, the motions will be granted.

---

[1]Based on a stipulation between DeRozier and Walgreen, the Court previously dismissed DeRozier's claim that Walgreen failed to adequately investigate the information it reported to Choicepoint. (Doc. # 51.)

**BACKGROUND**

This is the second motion for summary judgment that the Court has entertained in this matter, so the Court will assume the reader has some familiarity with the facts of the case. In short, DeRozier was working as a cashier at Walgreen on July 26, 2008, when a friend of her daughter's stopped by the store and asked to be repaid $10 that was owed the girl. DeRozier did not have any cash on her at the time, so she took $10 from the till and gave it to the girl with the intent to simply write a check for $10 more than what she planned to purchase at the end of her shift in order to replace the $10. The problem was that Jarmuskiewicz had already pulled DeRozier's cash drawer by the time she went to replace the $10. As she could not put the money in her drawer, DeRozier approached Jarmuskiewicz and gave him the $10 with an explanation and an apology. Jarmuskiewicz reported the incident to the Walgreen's loss prevention office and the store's manager.

Before all this happened, on April 2, 2008, DeRozier and the store manager both signed a document entitled "Employee Orientation/Policy Review Checklist" (the "Checklist"). DeRozier had been working at the store prior to signing the Checklist. The two-page Checklist contains a number of statements beginning with the words "I understand." Included among these is a provision regarding what escalating discipline would follow first, second, third and fourth offenses involving "cash handling errors." (Doc. # 56 Ex. A.) After the fourth instance of a cash handling error, the document indicates that the employee will be discharged following consultation with the store manager and Loss Prevention. (*Id.*)

Prior to July 28, 2008, DeRozier had never been disciplined by Walgreen for a cash handling error. (Second DeRozier Decl. ¶ 3.) Nevertheless, after DeRozier admitted taking $10 out of her register August 6, 2008, Walgreen terminated her employment for theft.

2

**ANALYSIS**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**Contract Claim against Walgreen**

Walgreen contends it is entitled to summary judgment on DeRozier's contract claim for the simple reason that no employment contract ever existed and her employment was terminable at will. DeRozier disagrees and claims that the Checklist was a contract between her and Walgreen which altered her status as an at-will employee.

In Wisconsin, employment is generally terminable at the will of either an employer or employee without cause. *Forrer v. Sears, Roebuck & Co.*, 36 Wis. 2d 388, 393, 153 N.W.2d 587 (1967)*.* An employee-at-will is wrongfully discharged only when the discharge runs afoul of fundamental and well-defied public policy. *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 572-73, 335 N.W.2d 834 (Wis. 1983). By entering into an express contract with the employer, an employee's at-will status may be abrogated. In *Ferraro v. Koelsch*, 124 Wis. 2d 154, 368 N.W.2d 666 (Wis. 1985), the Wisconsin Supreme Court recognized that an employee handbook may be evidence of an agreement between employee and employer to abrogate the employee's at-will status.

*Ferraro* involved a security guard employed by a hotel. In his job application, the employee acknowledged that his prospective employment was at-will. When he began working for the hotel, the employee was provided a handbook. The handbook included a statement requiring the employee to acknowledge that he received and read the handbook and that he accepted the policies

3

and rules included in the 48-page document as a condition of his continued employment. 124 Wis. 2d at 158-59. The handbook provided a framework in which employees would be disciplined for violations of the rules and policies. The court found that the handbook was evidence of an express contract, supported by consideration in the form of the hotel's promise of employment on the terms and conditions stated and the employee's promise to continue employment under those conditions. *Id*. at 671-72. Further, the language of the handbook made it clear that the parties intended to abrogate the at-will employment relationship, as the hotel promised that layoffs would be made taking seniority into account. The employer also indicated it would apply two different processes for discharging employees based on whether or not they were probationary employees, which the court took as an agreement contemplating "some sort of tenure dichotomy" between the two groups of employees. *Id*. at 165. In short, the handbook stated what the company offered its employees, and what it expected from its employees in return. *Id*.

Although *Ferraro* makes it clear that in Wisconsin an at-will contract may be modified by a personnel manual or handbook, the court did not hold that all such manuals or handbooks will necessarily abrogate the at-will relationship. Instead, courts are left to consider the handbook at issue and determine whether it is evidence that the parties intended to abrogate the at-will relationship based on an express agreement. *See Mursch v. Van Dorn Co.*, 851 F.2d 990, 994 (7th Cir. 1988) (noting that *Ferraro* court "held that the particular handbook in question and the particular factual situation must be analyzed to determine whether the parties had manifested 'an express intent to bind one another in a relationship that was not an at will employment contract.'") (quoting *Ferraro*, 124 Wis. 2d at 168). While a handbook or similar document may be evidence of an express agreement sufficient to alter the nature of the employment relationship, the *Ferraro*

4

court noted that "it would not by implication *alone* convert a handbook produced by an employer for the guidance and orientation of employees into an express contract." 124 Wis. 2d at 166. Thus, before a court concludes that the employment relationship has been converted to one of express contract, it must be clear that the handbook or manual in question "covers all of the critical areas of employee conduct." *Wolf v. F&M Banks*, 193 Wis. 2d 439, 452, 534 N.W.2d 877 (Wis. Ct. App. 1995).

Here, DeRozier signed the two-page Checklist sometime after she started working at Walgreen. The Checklist set forth a list of understandings that employees were expected to have concerning their own behavior and some of Walgreen's policies. Nothing in the Checklist limits Walgreen's right to terminate its employees with or without cause. There is no express provision in the document requiring compliance with the provisions as a condition of continued employment. In contrast, *Ferraro* explicitly agreed that compliance with the handbook was a "condition of my continued employment." *Id*. at 158-59. The 48-page handbook there at issue expressly stated that "Hyatt policy requires that employees not be dismissed or laid-off without just cause." *Id.* at 159. The handbook further defined what "just cause" included, afforded certain rights based on seniority and distinguished between probationary and regular employees. *Id.* In this case, DeRozier relies entirely on a provision of the Checklist which sets forth a framework for disciplining employees for cash handling errors, including termination after a fourth offense. The phrase "cash handling errors" is not defined, however, and there is no similar progressive discipline framework set forth for any other misconduct. The only other provision in the Checklist relating to termination is ". . . I understand violations of Walgreens Policies and Procedures may affect my employment to include suspension and/or termination."

Walgreen's Employee Orientation/Policy Review Checklist falls far short what is required to transform an at-will employment relationship into one terminable only for cause. Its obvious purpose is to make each new employee aware of the conduct expected of him or her. No where is there any statement by Walgreen that employees will be terminated only for cause. The Checklist lacks the kind of detail that would be needed for "an express contract incorporating all the provisions thought desirable by the employer in respect to obligations of the employee, misconduct, and employee discipline and discharge." *Ferraro*, 124 Wis. 2d at 167. It cannot reasonably be read as an agreement in which DeRozier and Walgreen "expressed intent to bind one another in a relationship that was not an at-will employment contract." *Id.* at 168 (footnote omitted). Moreover, it does not cover "all of the critical areas of employee conduct." *Wolf*, 193 Wis. 2d at 452. Because the Checklist cannot reasonably be construed as a contract that abrogated the at-will employment relationship between Walgreen and DeRozier, Walgreen's motion for summary judgment on the contract claim will be granted.

### Tortious Interference Claim against Jarmusckiewicz

Jarmuskiewicz, on the other hand, asserts that DeRozier's claim of tortious interference with contract must fail because he was acting within the scope of his duties. In order to prove tortious interference with contract, a plaintiff must show: (1) the plaintiff had a contract or a prospective contractual relationship with a third party; (2) the defendant interfered with that relationship; (3) the interference by the defendant was intentional; (4) there was a causal connection between the interference and damages; and (5) the defendant was not justified or privileged to interfere. *Breimeister v. Lehner*, 2006 WI App 140, ¶ 48, 295 Wis. 2d 429, 720 N.W.2d 531 (citing *Finch v.*

6

*Southside Lincoln-Mercury, Inc.*, 2004 WI App 110, ¶ 18 n. 8, 274 Wis. 2d 719, 685 N.W.2d 154).

The defendant bears the burden of proving that his interference was justified or privileged. *Id*. at

¶ 50. "To determine whether conduct is justified or privileged, the trier of fact must weigh all the

circumstances. The factors to be considered include the nature, type, duration and timing of the

conduct, whether the interference is driven by an improper motive or self-interest, and whether the

conduct, even though intentional, was fair and reasonable under the circumstances." *Id*. at ¶ 51

(citations omitted). Before a court considers the fifth prong, which is decisive, it must consider the

third prong and ask whether the interference was intentional.

As DeRozier observes, cases requiring proof of a subjective state of mind, such as those

involving issues of motivation and intent, are not usually appropriate for resolution on summary

judgment. *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-*

*Wisconsin, Inc.*, 991 F.2d 1249, 1258 (7th Cir. 1993). But there must be some evidence from which

a jury could conclude that Jarmuskiewicz's motivation was improper. Jurors are not allowed to

speculate. I need not dwell on the issue of intent, however, because wholly apart from

Jarmuskiewicz's motivation, his action reporting DeRozier's misconduct to his employer was

justified and privileged.[2] No reasonable jury could conclude that Jarmuskiewicz's reporting of the

event to Loss Management after DeRozier admitted to him that she took $10 from her cash register

_____

[2]Although Jarmuskiewcz argues that summary judgment is appropriate because no contract existed between Walgreen and DeRozier, "'[t]here can be tort liability for interference with a contract terminable at will.'" *Mackenzie v. Miller Brewing Co.*, 2000 WI App 48, ¶ 63, 234 Wis. 2d 1, 608 N.W.2d 331 (quoting *Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Wis. Ct. App. 1979)). Further, DeRozier alleges that Jarmuskiewcz interfered with her "actual and prospective contractual relationship with Walgreens." (Am. Compl. ¶ 8.)

7

was anything but fair and reasonable under the circumstances. To conclude otherwise would be to eviscerate the authority of supervisors to report suspected instances of employee misconduct to management, as they would fear being dragged into court even if the information they reported was in fact true.

Here, it is undisputed that on July 26, 2008, DeRozier herself approached Jarmuskiewicz, apologized, handed him two five dollar bills, and explained that she had borrowed ten dollars from her register. Jarmuskiewicz simply reported this event in a written statement he gave to Chris Rollin, a member of Walgreen's Loss Prevention Department. The only other person to whom Jarmuskiewicz disclosed the incident was the store's manager, Richard Varick. The fact that the information Jarmuskiewicz relayed was true and amounts to employee misconduct by any reasonable standard means that he is entitled to judgment as a matter of law, as the transmission of truthful information is privileged and cannot constitute tortious interference with a contract or prospective contract. *Liebe v. City Fin. Co.*, 98 Wis. 2d 10, 13, 295 N.W.2d 16 (Wis. Ct. App. 1980). Accordingly, Jarmuskiewicz's motion for summary judgment will be granted.

## CONCLUSION

Because the Checklist does not reflect an agreement between DeRozier and Walgreen to abrogate the at-will employment relationship, the Checklist was not a contract Walgreen could have breached. The undisputed facts demonstrate that Jarmuskiewicz's reporting of the events of July 16, 2008 was truthful, so he is entitled to judgment as a matter of law on DeRozier's claim of tortious interference with an actual or prospective contract.

8

**THEREFORE IT IS ORDERED** that Walgreen's and Jarmuskiewicz's motions for summary judgment are **GRANTED**. Both Walgreen and Jarmuskiewicz are dismissed from this action.

Dated this ___11th___ day of May, 2010.

s/ William C. Griesbach
WILLIAM C. GRIESBACH
United States District Judge
